UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DILLON HARPER, JO BEE HARPER, and ROBERT BERNING, <br><br> Plaintiffs, <br><br> v. <br><br> GENZYME CORPORATION, as successor in interest to Genetic Design, Inc., <br><br> Defendant. | Case No. 25-cv-296-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Genzyme Corporation's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 18). Plaintiffs Dillon Harper, Jo Bee Harper, and Robert Berning have responded to the motion (Doc. 21), and Genzyme has replied to that response (Doc. 22). The Court will allow Jo Bee Harper's negligence claim to proceed but will dismiss Dillon Harper's and Robert Berning's negligence claims with leave to replead because they fail to allege the compensable injury required for a negligence cause of action. It will further dismiss all claims under the Illinois Parentage Act because the plaintiffs fail to allege any cause of action cognizable under the Act.

**I.      Standard for Dismissal**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2)

plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atl.*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations. *Bell Atl.*, 550 U.S. at 555. Nevertheless, it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499

F.3d at 667; *see, e.g., Kaminski*, 8 F.4th at 776-77.

## II.     Alleged Facts

As a preliminary matter, Genzyme's motion to dismiss refers to matters outside the pleadings, namely, a court order appointing Genetic Design as an examiner of blood types. When such material is presented in connection with a Rule 12(b)(6) motion to dismiss, the Court may treat the motion to dismiss as a motion for summary judgment or it may exclude the additional material from consideration. *See* Fed. R. Civ. P. 12(d). There is an exception to this rule, however, when the additional material is something of which the Court may take judicial notice. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). The Court may take judicial notice of public records, including judicial proceedings. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043-44 (7th Cir. 2019); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). In this case, Genzyme refers to a public record in the plaintiffs' original Parentage Act case, which the Court may consider without converting the motion to a summary judgment motion. Other extrinsic matters attached by the plaintiffs will be disregarded since they do not fall within an exception to the general rule of exclusion.

Viewing the allegations in the Complaint and judicial records and drawing all reasonable inferences in favor of the plaintiffs, the materials establish the following relevant facts.

Dillon Harper was born to Jo Bee Harper in February 1987. Several years later, Jo Bee sought child support in a legal proceeding against Robert Berning, the man she thought was Dillon's father. Pursuant to the Illinois Parentage Act of 1984, the Marion County, Illinois, Circuit Court appointed the co-directors of Genetic Design, Inc., the predecessor to Genzyme, to conduct blood tests to determine whether Robert was Dillon's father.[1] No party challenged

---

[1] *See* Ill. Rev. Stat. 1987, ch. 40, ¶ 2511(b) ("The tests shall be conducted by an expert or experts

Genetic Design's qualifications to conduct the tests ordered by the court.

Genetic Design conducted the blood tests in its North Carolina facility, which was made up of various laboratories in several buildings.  All tests completed in the first lab showed Robert was Dillon's father, but all tests completed in the second lab showed he was not.  Genetic Design reported to the court that the tests excluded Robert as Dillon's father.  That test result was presumed accurate and was not rebutted by clear and convincing evidence.  *See* Ill. Rev. Stat. 1987, ch. 40, ¶ 2511(e), (i).

In light of the test results, the plaintiffs proceeded in their lives as if Robert were not Dillon's father.  As a consequence, Dillon never developed a relationship with Robert, and Jo Bee never received child support from Robert to assist in Dillon's upbringing.

Later, in 2023, an inquiry from Ancestry.com spurred Jo Bee to get new DNA tests, this time at a different laboratory.  The new tests showed that Robert was Dillon's father.

In this lawsuit, Dillon, Jo Bee, and Robert are suing Genzyme, as successor in interest to Genetic Design, alleging Genetic Design was negligent (Count 1) and violated the Illinois Parentage Act (Count 2).  The plaintiffs argue the 1991 results evidenced a negligent sample mix-up between the two labs conducting the tests at Genetic Design's facilities.  Dillon claims to be damaged by the deprivation of physical, mental, emotional, and monetary support from Robert (¶ 31); Jo Bee claims to be damaged by the lack of child support from Robert (¶ 11).

Genzyme asks the Court to dismiss this case on the grounds that the plaintiffs have not adequately pleaded damages to support a negligence claim, there is no private cause of action for damages under the Parentage Act, and it is entitled to quasi-judicial immunity because it performed the 1991 tests at the direction of a court.

---

appointed by the court.").

**III.     Analysis**

Jo Bee seeks as damages lost child support from Robert as a consequence of the allegedly negligently conducted parentage test. Dillon claims he was damaged because he did not receive the physical, mental, and monetary support from Robert. Robert pleads no claim for damages.

Genzyme argues that tortious interference, whether slight or total, with a parent-child relationship is not a recoverable injury under Illinois law. It further argues that there is no private cause of action under the Parentage Act against a third party like itself. Genzyme also claims quasi-judicial immunity because Genetic Design conducted the testing pursuant to a court order in a judicial proceeding.

A.     <u>Damages to Parent-Child Relationship</u>

Under Illinois law, compensable damages are an essential element of a negligence case. *Brobbey v. Enter. Leasing Co. of Chi.*, 935 N.E.2d 1084, 1093 (Ill. App. Ct. 2010). But Illinois does not recognize damages to the parent-child relationship as a compensable injury outside the context of a wrongful death lawsuit. *Vitro v. Mihelcic*, 806 N.E.2d 632, 635 (2004) (citing *Dralle v. Ruder*, 529 N.E.2d 209, 212 (Ill. 1988)); *see* Illinois Wrongful Death Act, 740 ILCS 180/2(a) (allowing next of kin to recover for "pecuniary injuries"); *Elliott v. Willis*, 442 N.E.2d 163, 168 (Ill. 1982) (pecuniary injuries under the Wrongful Death Act include the loss of the decedent's society and companionship by the next of kin). Indeed, relying on the *Dralle-Vitro* line of cases, the Illinois Supreme Court has recently confirmed that "Illinois does not presently recognize the tort of interference with the parent-child relationship, regardless of the damages claimed," and instead deferred to the legislature to create such a cause of action. *Hulsh v. Hulsh*, 2025 IL 130931, 2025 WL 1462937, at *1, *6 (Ill. May 22, 2025).

The plaintiffs attempt to distinguish the *Dralle-Vitro* line of cases by suggesting that the

deprivation of a parent-child relationship for 32 years is the functional equivalent of a wrongful death—an outright denial of the relationship, not the mere interference previously addressed by the Illinois Supreme Court. They offer no caselaw in support of such a proposition, and the Court rejects it as unfounded in Illinois law and extremely unlikely to be adopted by the Illinois Supreme Court.

Thus, to the extent Dillon and Robert may allege they have been damaged by the loss of a parent-child relationship, they have not alleged a compensable injury, and their negligence claims must be dismissed. However, because the Court believes they may be able to plead compensable injuries, it will allow them an opportunity to file an amended complaint.

To the extent Jo Bee seeks lost child support, that allegation of damage is distinct from damage to a parent-child relationship. Genzyme does not argue in its motion that Jo Bee has insufficiently pleaded damages, so the Court will not dismiss her claim on that basis.

B.  Illinois Parentage Act

The Illinois Parentage Act is based on "the right of every child to the physical, mental, emotional, and financial support of his or her parents" regardless of the parents' relationship to each other. 750 ILCS 46/102. It authorizes civil proceedings to adjudicate the parentage of a child, 750 ILCS 46/601, and to issue final judgment and appropriate orders on related matters such as child support or parenting time, 750 ILCS 46/802. It allows participants in the civil proceeding for adjudication of parentage to challenge experts selected by the Court to perform and report on parentage testing, 750 ILCS 46/402(a), and to present their own expert witnesses whose opinions may differ from the Court's selected experts, 750 ILCS 46/407. And the Parentage Act allows for an appeal, vacation of judgment, or other judicial review as provided under Illinois law. 750 ILCS 46/621(e). It does not, however, create or enlarge parentage rights

under the common law, 750 ILCS 46/104, and it does not expressly create any private cause of action for interference with a parent-child relationship by a mistaken expert or any other third party. Instead, it leaves detection of experts' errors to the adversarial process through cross-examination of expert witnesses, conflicting expert testimony, competing evidence, and direct appeal.

The plaintiffs ask the Court to imply a private right of action from the Parentage Act. Illinois courts will imply a cause of action from a statute where

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1117-18 (Ill. 1999). Implying a cause of action from a statute that does not expressly create one is an "extraordinary step" that should be taken "only when it is clearly needed to advance the statutory purpose and when the statute would be ineffective, as a practical matter, unless a private right of action were implied." *Rice v. Marathon Petroleum Corp.*, 241 N.E.3d 410, 418 (Ill. 2024) (internal quotations omitted).

It appears that the plaintiffs are members of the classes of people the Parentage Act was enacted to benefit: children who have a right to support from their parents, and parents who need a procedure for ensuring their children receive the appropriate parental identification and support. It is less likely that the statute was designed for the purpose of preventing negligent or otherwise erroneous testing to determine parentage. The burden of flushing out unqualified experts or erroneous testing to support their expert opinions was left to the ordinary tools of the adversarial system—cross-examination, competing experts and evidence, and appeal. A private right of action against a negligent expert is simply not consistent with the underlying purposes of

the Act to govern obligations of parents to their children.

Finally, creating a cause of action against expert witnesses whose opinions end up being erroneous is not necessary to effectively administer the statute. The statute has its own comprehensive procedures for accurately determining parentage and support obligations, and holding expert witnesses liable in civil suits is simply not essential to that scheme.

For these reasons, the Court declines to take the "extraordinary step" of recognizing a private right of action against an expert witness or any other third party under the Parentage Act. There is simply no statutory cause of action—express or implied—like the plaintiffs attempt to plead in Count 2. The Court must therefore dismiss Count 2 with prejudice.

C.      Quasi-Judicial Immunity

Genzyme relies on absolute judicial immunity, which extends as quasi-judicial immunity to court-appointed experts serving as "arms of the court" and at the direction of the court. *Vlastelica v. Brend*, 954 N.E.2d 874, 879 (Ill. App. Ct. 2011) (citing *Cooney v. Rossiter,* 583 F.3d 967, 970 (7th Cir. 2009)). This allows court-appointed experts to fulfill their obligations to the court without worry of harassment or intimidation. *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001); *Vlastelica*, 954 N.E.2d at 879. This is especially true where the expert is asked to use his or her discretion to advise the court of an opinion on a matter subject to the court's judgment. *Heisterkamp v. Pacheco*, 47 N.E.3d 1192, 1195 (Ill. App. Ct. 2016) (child representative in custody proceeding); *Vlastelica*, 954 N.E.2d at 880-81 (same). However, quasi-judicial immunity also applies to those engaging in a non-discretionary or administrative function at the explicit direction of a judge. *Zoretic v. Darge*, 832 F.3d 639, 644 (7th Cir. 2016).

The plaintiffs argue that quasi-judicial immunity does not apply to Genetic Design because it was not exercising discretion when it performed parentage testing, which they claim

involves "performing repetitive, non-discretionary, formulaic, and purely technical functions." Pls.' Resp. M. Dism. 6 (Doc. 21); *Miller v. Niblack,* 942 S.W.2d 533 (Tenn. Ct. App. 1996). *Miller* held that genetic testing was not a discretionary function, so quasi-judicial immunity did not apply. *Id.* at 539.

It is unclear from the allegations in the Complaint whether Genetic Design's role in completing the parentage test involved the type of discretion akin to a judge's discretion or simply the *pro forma* completion of tests without exercising discretion. And neither party has adequately addressed whether Genetic Design could fall within the second, non-discretionary category of those entitled to quasi-judicial immunity. Accordingly, it would be premature to afford Genzyme quasi-judicial immunity at this time.

## IV.    Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** Genzyme's motion to dismiss (Doc. 18);

- **DISMISSES with prejudice** Count 2;

- **DISMISSES without prejudice** Dillon's and Robert's claims in Count 1 and **ORDERS** that they shall have 30 days from entry of this order to file an Amended Complaint;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  October 9, 2025**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
